IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VALERO MARKETING AND          §
SUPPLY CO.,                   §
                              §
     Plaintiff,               §
                              §
v.                            §          CIVIL ACTION NO. H-09-2957
                              §
BALDWIN CONTRACTING CO., INC.,§
                              §
     Defendant.               §

MEMORANDUM AND ORDER

Pending is Defendant Baldwin Contracting Co., Inc.'s Motion to
Dismiss Pursuant to Rule 12(b), and Alternative Motion to Abstain,
Stay or Abate (Document No. 4).  After having carefully considered
the motion, supplement, responses, reply, and the applicable law,
the Court concludes for the following reasons that the motion to
dismiss should be granted.

I.  Background

Plaintiff Valero Marketing and Supply Co. sold asphalt cement
to Defendant Baldwin Contracting Co., Inc. pursuant to the parties'
April 2008 contract, entered into in California.[1]  Defendant, a

_____

[1] Valero is a Delaware corporation with its principal place of
business in San Antonio, Texas.  Document No. 1, ex. B at 1.
Baldwin is a California corporation with its principal place of
business in California; it has no offices and conducts no business
in Texas.  Document No. 4, ex. A at 1.  According to a California
state court judgment on this same issue, the parties entered into
the contracts in California.  Document No. 9, ex. A at 4.

contractor, used the asphalt on a construction job for Thunderhill
Raceway Park ("Thunderhill") near Willows, California.[2]   After
completion of the paving project, Thunderhill withheld payment to
Defendant, asserting that the paving asphalt did not meet required
specifications.[3]   Defendant, in turn, withheld its payment of
$250,638.83 to Plaintiff on account of the asphalt not meeting
specification requirements.[4]

Defendant filed a declaratory action against Thunderhill and
Valero in California state court on July 24, 2009.[5]   Plaintiff
later filed this suit in state court in Harris County, Texas.
Defendant timely removed, and now seeks dismissal of Plaintiff's
claims for: (1) lack of personal jurisdiction; and (2) improper
venue.   FED. R. CIV. P. 12(b)(2) and (3).

Plaintiff does not contest that Defendant has no offices, does
no business, and has no presence in Texas.   Rather, Plaintiff
asserts that Defendant expressly consented to jurisdiction in this
Court in a forum selection clause.   Defendant argues that it made
no such agreement and that there is no forum selection clause in
its contract with Plaintiff.   Alternatively, if a forum-selection
clause is part of the contract, Defendant asserts it is a product

---

[2] Document No. 4 at 1.

[3] Id.

[4] Id.

[5] Id.; Document No. 9 ex. A.

of fraud or overreaching, and therefore unreasonable and unenforceable.[6]

## II.  Discussion

## A.  Standard of Review

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945).  Two types of personal jurisdiction are recognized: (1) specific and (2) general.  Specific jurisdiction exists when the cause of action relates to or arises out of the

---

[6] Document No. 4 at 5-6.

defendant's contacts with the forum.  *See* <u>Helicopteros Nacionales</u> <u>de Columbia, S.A. v. Hall</u>, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has systematic and continuous contacts with the forum.  *See* <u>id.</u> at 1872-73.

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction.  *See* <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F.3d 208, 215 (5th Cir. 2000); <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 211 (5th Cir. 1999).  Proof by a preponderance of the evidence is not required.  <u>Kelly v. Syria Shell Petrol. Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000).  A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* <u>WNS, Inc. v. Farrow</u>, 884 F.2d 200, 203-04 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor.  *See* <u>Alpine View</u>, 205 F.3d at 215.

A party who signs a contract with a forum selection clause has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum.  *See* <u>Burger</u> <u>King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2182 n.14 (1985); *see*

*also* <u>Kevlin Servs., Inc. v. Lexington State Bank</u>, 46 F.3d 13, 15 (5th Cir. 1995) (reversing the trial court's dismissal for lack of personal jurisdiction when the choice of forum was prescribed by contract).   "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process."  <u>Burger King</u>, 105 S. Ct. at 2182 n.14 (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 92 S. Ct. 1907, 1916 (1972)).

Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  <u>Bremen</u>, 92 S. Ct. at 1913 (internal quotation marks and citations omitted). "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the [resisting party] of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."  <u>Haynsworth v. The Corporation</u>, 121 F.3d 956, 963 (5th Cir. 1997).   "The party resisting enforcement [of the forum selection clause] on these grounds bears a 'heavy burden of proof.'"  <u>Id.</u> (quoting <u>Bremen</u>, 92 S. Ct. at 1917).

The Court first must determine whether Defendant agreed to the
clause before considering whether it is *enforceable*.  This question
is governed by state law.  *See* <u>Rimkus Consulting Group, Inc. v.
Rault Resources, Inc.</u>, No. H-07-1494, 2008 WL 901483, at \*4 (S.D.
Tex. March 31, 2008) (Rosenthal, J.) ("The first issue is what
state law applies to determine whether the forum-selection clauses
in the terms and conditions attached to the engagement letters were
part of the parties' contracts."); *but see* <u>Compana LLC v. Mondial
Assistance SAS</u>, No. 3:07-CV-1293-D, 2008 WL 190522, at \*3 (N.D.
Tex. Jan. 23, 2008) (Fitzwater, C.J.) ("Federal law governs whether
the Registration Agreement's forum selection clause binds Mondial
in this action." (citing <u>Haynsworth</u>, 121 F.3d 962)).

Both parties cite to Texas law regarding construction of their
agreement, and the Court will therefore apply Texas law on the
preliminary determination of whether that clause is part of the
agreement.

B.   <u>Analysis</u>

Defendant purchaser signed and returned a "Sales Acknowledg-
ment Form" to Plaintiff seller on April 7, 2008.[7]   The two-page
form begins: "Valero Marketing and Supply Company is pleased to
submit to you the following Price Quote for the Project(s) listed

---

[7] Document No. 4, ex. C at 2; Document No. 7, ex. A at 2.

below."[8]  The first page lists, among other information, a "price

quotation" for 350 tons of "PG76-22PM," indicates "FOB/LOADING

TERMINAL" as "Benicia or Pittsburg, CA," and notes it is effective

"Upon receipt of signed acknowledgement [sic]."[9]  At the bottom of

the first page, in small type, appears the following:

> Note:  All prices quoted above are subject to Valero's
> General Terms and Conditions for Petroleum Product
> Purchases/Sales.  In addition, before purchasing product
> from Valero, Customer must sign and deliver Valero's form
> Terminal Loading Agreement.[10]

Defendant represents, and Plaintiff does not contest, that

Defendant was never given a copy of the General Terms and

Conditions for Petroleum Product Purchases/Sales ("General

Terms").[11]  The General Terms are found in a series of 24 numbered

paragraphs printed on the last four pages of a five-page document

entitled "Sales Agreement."[12]

Plaintiff relies upon the last numbered paragraph on page 5 of

the Sales Agreement:

24.  Choice of Law and Jurisdiction: ANY CONTROVERSY,
     CAUSE OF ACTION, DISPUTE OR CLAIM (COLLECTIVELY

---

[8] Document No. 4, ex. C at 1.

[9] Id.

[10] Id.

[11] Document No. 4 at 5; id., ex. A (Vercruysen Decl.).

[12] Id., ex. D.

> REFERRED TO AS .CLAIMS.) ARISING OUT OF, RELATING
> TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE
> BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE
> GOVERNED BY THE SUBSTANTIVE AND PROCEDURAL LAWS
> (EXCLUDING ANY CONFLICT-OF-LAWS, RULES OR
> PRINCIPLES WHICH MAY REFER THE LAWS OF THE STATE OF
> TEXAS TO THE LAWS OF ANOTHER JURISDICTION) OF THE
> STATE OF TEXAS SHALL APPLY [sic]. THE PARTIES
> SPECIFICALLY AGREE THAT THE SOLE JURISDICTION FOR
> ANY CLAIMS SHALL BE IN STATE OR FEDERAL COURTS
> LOCATED IN HARRIS COUNTY, TEXAS.[13]

On the upper part of the front page of the Sales Agreement is a box within which it is stated:

> "Valero Marketing and Supply Company ("Seller") agrees to
> sell and deliver, and BALDWIN CONTRACTING COMPANY
> ("Buyer"), agrees to purchase, receive, and pay for the
> following product(s) in accordance with the terms and
> provisions of this Sales Agreement and the General Terms
> and Conditions attached hereto and incorporated herewith
> ("Agreement").

However, none of the blank lines on the front page of the Sales Agreement has been filled in and no one has signed it. Moreover, on the front page the following printed statement also appears:

> IF THIS AGREEMENT IS NOT EXECUTED BY BUYER AND SUBMITTED
> TO SELLER WITHIN FIFTEEN (15) CALENDAR DAYS FOLLOWING THE
> DATE SET FORTH BELOW, THEN THE OFFER SET FORTH IN THIS
> AGREEMENT SHALL EXPIRE AUTOMATICALLY WITHOUT FURTHER
> NOTICE.

---

[13] Id., ex. D at 5.

There is no "date set forth below."  Defendant represents, and Plaintiff does not contest, that Defendant never received a copy of this putative Sales Agreement.  Plaintiff replies, however, that the General Terms may be found on its web site, and asserts that Defendant could have referenced them.[14]

The parties agree that the Sales Acknowledgment, and not the Sales Agreement, constitutes their agreement.[15]  Therefore, the forum-selection clause is part of the parties' agreement only if the Sales Acknowledgment effectively incorporates it.  *See* In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006) ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference.").

Texas courts construe contracts to give effect to "the true intentions of the parties as expressed in the instrument."  J.M Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). Contract terms are given "their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009).  If the contract is subject to two or more reasonable interpretations based upon this construction, it is ambiguous, which creates a fact issue on the parties' intent. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d

---

[14] Document No. 7 at 6; id., ex. C (Tomey Decl.).

[15] Document No. 8 at 4; Document No. 10 at 4.

587, 589 (Tex. 1996).   However, a contract term is not ambiguous merely because the parties offer conflicting interpretations.   Id. The Sales Agreement here is unambiguous, and is therefore capable of being interpreted as a matter of law.   *See* Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc., 297 S.W.3d 248, 252 (Tex. 2009).

The parties differ on whether the Sales Agreement incorporates the forum selection clause found in the General Terms.   In Texas, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged.   The language used is not important provided the document signed . . . plainly refers to another writing."   In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135 (Tex. 2004) (quoting Owen v. Hendricks, 433 S.W.2d 164, 166 (Tex. 1968)).

Merely   referencing   another   document,   however,   does   not incorporate   the   *entire*   document   when   the   language   used   in   the incorporation clause does not indicate the parties' intent to do so.   Guerini Stone Co. v. P.J. Carlin Constr. Co., 36 S. Ct. 300, 306   (1916)   ("[A]   reference   by   the   contracting   parties   to   an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."); Cappadonna Elec. Mgmt. v. Cameron County, 180 S.W.3d 364, 371 (Tex. App.--Corpus Christi 2005, orig. proceeding) (disputes relating to doctrine of incorporation   by   reference   "often   raise   questions   of   contract

interpretation"); <u>Tribble & Stephens Co. v. RGM Constructors, L.P.</u>, 154 S.W.3d 639, 665 (Tex. App.--Houston [14th Dist.] 2004, pet. denied) ("A mere reference to another document is insufficient to establish a wholesale incorporation of the referenced document" (citing <u>Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs.</u>, 73 S.W.3d 545, 550 (Tex. App.--Houston [1st Dist.] 2002, orig. proceeding [mand. denied]))); *see also* <u>Nat'l Presort Servs., Inc. v. ACS State & Local Solutions, Inc.</u>, 176 F. App'x 543, 548 (5th Cir. 2006) (unpublished op.) ("No particular language is required to incorporate a document by reference; all that is necessary is that the parties' intent is plainly expressed." (citing <u>Owen</u>, 433 S.W.2d at 166)).

For example, in <u>Tribble & Stephens</u>, a subcontractor signed a subcontract that contained a clause binding it "for the performance of Subcontractor's Work in the same manner as" the contractor was bound to the owner in the *primary* contract.  154 S.W.3d at 663-64. Construing the terms of the subcontract, the Fourteenth Court of Appeals found that the subcontractor was bound to the terms of the primary contract only with respect to "the performance of [its] [w]ork."  <u>Id.</u> at 663-65.  Similarly, in <u>Guerini</u>, a construction subcontract specified that work be performed in a manner "agreeable to the drawings and specifications."  36 S. Ct. at 301-02.  The Supreme Court held that the primary contract in the agreement could only be considered "for the purpose of showing . . . what drawings and specifications were referred to in the subcontract," and that

11

the lower court erred in "holding plaintiff bound by the provisions of the general contract."  Id. at 306.[16]

Although the Sales Acknowledgment makes reference to the General Terms, its specific language reflects an objective intent to incorporate the General Terms only for a *limited purpose*.  That language in the acknowledgment provides that "*[a]ll prices quoted above* are subject to Valero's General Terms and Conditions for Petroleum Product Purchases/Sales."[17]  This is not, as Plaintiff argues, an example of language that "clearly and expressly states that *the agreement* is 'subject to Valero's General Terms and Conditions . . . .'"[18]  Nor does the language suggest that *Defendant* is bound by *all* of the General Terms and Conditions.  Rather, the plain language of this provision states only that "all prices" are subject to the General Terms.[19]  Hence, only the quoted "prices" are

---

[16] Though Guerini was not decided based upon Texas law, it has been cited and followed by courts interpreting contracts under Texas law.  *See, e.g.*, IT Corp. v. Motco Site Trust Fund, 903 F. Supp. 1106, 1117 (S.D. Tex. 1994) (Rosenthal, J.); Conway v. Saudi Arabian Oil Co., 867 F. Supp. 539, 542 (S.D. Tex. 1994) (Jack, J.); Tribble & Stephens, 154 S.W.3d at 664; Sullivan v. City of Galveston, 17 S.W.2d 478, 490 (Tex. Civ. App.--Galveston 1928), *aff'd* 34 S.W.2d 808.

[17] Document No. 4, ex. D at 1 (emphasis added).

[18] Document No. 7 at 4 (emphasis added).

[19] In contrast, the next sentence in the Sales Acknowledgment provides an example of how the parties referred to an *entire* agreement: "In addition, before purchasing product from Valero, Customer must sign and deliver Valero's form Terminal Loading Agreement."  Document No. 4, ex. C at 1.

subject to the General Terms.  Indeed, the General Terms include
specific provisions that potentially would modify the actual
payments required to be made under the Sales Acknowledgment, such
as the finance terms in Paragraph 3 and the tax payment provisions
in Paragraph 9.[20]

Because Defendant did not agree to the forum selection clause,
there is no need hypothetically to consider whether it would have
been enforceable under the M/S Bremen framework.  The Court has no
personal jurisdiction over Defendant.[21]

---

[20] Document No. 4, ex. D at 2-3.

[21] Although the parties both analyzed this case under Texas
law, as has the Court, it appears that the same result would be
obtained under California law.  *See* Scott's Valley Fruit Exch. v.
Growers Refrigeration Co., Inc., 184 P.2d 183, 189 (Cal. Ct. App.
1947), *disapproved on other grounds by* Hischemoeller v. Nat'l Ice
& Cold Storage Co. of Cal., 294 P.2d 433 (Cal. 1956):

> For the terms of another document to be incorporated into
> the document executed by the parties the reference must
> be clear and unequivocal, the reference must be called to
> the attention of the other party and he must consent
> thereto, and the terms of the incorporated document must
> be known or easily available to the contracting parties.

*See also* Shaw v. Regents of the Univ. of Cal., 67 Cal. Rptr. 2d
850, 856 (Cal. Ct. App. 1997) (quoting same).  As under Texas law,
the parties' objective intent is the ultimate inquiry.  *See* Shaw,
67 Cal. Rptr. 2d at 856 (citing CAL. CIV. CODE §§ 1636, 1638).
Documents may be incorporated by reference for only a particular
purpose.  Neuval v. Cowell, 36 Cal. 648, 650 (Cal. 1869) (cited in
Guerini).

III.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Baldwin Contracting Company, Inc.'s Motion to Dismiss Pursuant to Rule 12(b) (Document No. 4) is GRANTED, and Plaintiff Valero Marketing and Supply Company's claims are dismissed for want of personal jurisdiction over Defendant.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 19th day of March, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE